# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEROME ERSLAND, | ) |
| | ) |
| Petitioner, | ) |
| vs. | ) NO. CIV-15-0902-HE |
| | ) |
| CARL BEAR, WARDEN, | ) |
| JOSEPH HARP CORRECTIONAL | ) |
| CENTER, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner, who is represented by counsel, has filed a petition for writ of habeas corpus challenging his first degree murder conviction in Oklahoma County District Court Case No. CF-2009-3199. Doc. 1. Petitioner appealed his conviction and life sentence to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA"). The OCCA affirmed in an unpublished opinion. Ersland v. State, No. F-2011-638 (Okla. Crim. App. June 20, 2013). Petitioner also sought post-conviction relief, which the OCCA denied. Ersland v. State, No. PC-2015-94 (Okla. Crim. App. Apr. 30, 2015). Copies of the OCCA's opinions are attached to the response as Exhibits 5 and 7.

Petitioner presents two grounds for relief. Both are based on newly discovered evidence and both were raised on post-conviction. See Appellant's Brief, No. PC-2015-94 (Resp't's Ex. 6). In his first ground, petitioner asserts that because the OCCA denied him relief based on this new evidence, he was denied a fair trial and his right to present a defense. In his second ground, petitioner asserts that his trial counsel was ineffective for

not discovering and presenting the evidence at trial. For the following reasons, the court concludes that neither ground warrants relief.[1]

## THE FACTS

The facts are largely undisputed. On May 19, 2009, Antwun Parker and Jevontai Ingram attempted to rob the Reliable Pharmacy in Oklahoma City. Ingram was armed. Petitioner, who was working that day along with two female employees, shot and killed Parker. The question at trial was whether petitioner shot Parker in self-defense.

Petitioner first shot Parker in the head. Parker immediately fell to the ground. Ingram then fled and petitioner pursued him. When petitioner came back inside, Parker was still lying on the floor. He was alive but unconscious. Petitioner walked past Parker to go behind the counter. With a second gun, petitioner then reapproached Parker and shot him five more times. These shots were close range cluster shots to Parker's chest and abdomen. After the second shots, petitioner called 911.

Video surveillance cameras captured the event.[2] At trial, the State conceded that petitioner's first shot to Parker was lawful.

## GROUND ONE

In California v. Trombetta, 467 U.S. 479, 485 (1984), the Supreme Court held that the constitutional right to a fair trial under the Due Process Clause includes "a meaningful

---

[1] *Petitioner has not requested an evidentiary hearing, but in any event, an evidentiary hearing is unnecessary because petitioner's claims can be resolved on the existing record.* Anderson v. Att'y Gen. of Kan., *425 F.3d 853, 859 (10th Cir. 2005).*

[2] *The video surveillance tapes were admitted at trial as State's Exhibit 122. Respondent has provided the court with a copy of the exhibit.*

2

opportunity to present a complete defense." See also Chambers v. Mississippi, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). In his first ground for relief, petitioner asserts that the OCCA denied him this right when it failed to grant him relief in the form of new trial or an evidentiary hearing based on newly discovered evidence. In denying petitioner relief, the OCCA concluded that the evidence is not new evidence. It additionally held that even if the evidence had been presented at trial, it would not have affected the outcome of petitioner's trial. Ersland, No. PC-2015-94, slip op. at 4-5.

Because the OCCA addressed the merits of petitioner's claim, review is governed by 28 U.S.C. § 2254(d). Pursuant to this section of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), in order for petitioner to obtain relief, he must show that the OCCA's adjudication of his claim either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (acknowledging that "[t]he petitioner carries the burden of proof"). The very focus of this statutory provision is the reasonableness of the OCCA's decision. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan,

3

550 U.S. 465, 473 (2007). In other words, "[i]t is not enough that [this] court, in its independent review of the legal question, is left with a firm conviction that the [OCCA] was erroneous." What is required is a showing that the OCCA's decision is "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).

The Supreme Court has repeatedly acknowledged that Section 2254(d) "'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court[,]'" and that "[i]f [it] is difficult to meet, that is because it was meant to be." White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. ___, 134 S. Ct. 10, 16 (2013)); Harrington v. Richter, 562 U.S. 86, 102 (2011). Section 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Richter, 562 U.S. at 102. What remains, then, is a very narrow avenue for relief, one that permits relief only "*where there is no possibility* fairminded jurists could disagree that the [OCCA's] decision conflicts with [the Supreme] Court's precedents." Id. (emphasis added).

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

4

> justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 102-03 (citation omitted).

Petitioner's newly discovered evidence is his post-trial recollection that the second gun used to shoot Parker was in his pocket instead of in a drawer behind the counter.[3] Petitioner contends that this evidence "defeats the State's theory of malice" because (1) if the gun was in his pocket, and if he had wanted to kill Parker, then would have shot Parker on his way back into the store; (2) it shows that he did not go behind the counter to obtain the second gun but to call 911; and (3) it further supports his self-defense claim because it shows that he did not shoot Parker "until he heard and saw movement" from him. Pet. at 9.

Petitioner claims that he was able to recall this information about the second gun when he "was confronted by [his] new defense counsel [Doug Friesen][4] regarding findings from a recreation of the robbery . . . ." After "intense questioning" by Mr. Friesen, petitioner "recalled . . . that the gun [he] used to shoot [Parker] after [he] had returned from

---

[3] *In his discussion of "absent" evidence, petitioner references "**Gunfire from intruders**" and "**Traumatic PTSD**." Pet. at 9-11. The court has construed these references as an explanation of how the evidence regarding the location of the second gun was discovered and why it was not discovered earlier, not as additional pieces of his newly discovered evidence claim. On post-conviction, petitioner's newly discovered evidence claim concerned only the location of the second gun. Appellant's Brief, No. PC-2015-94, at 12-14. See also Ersland, No. PC-2015-94, slip op. at 4 (stating that petitioner's new evidence is the location of the second gun).*

[4] *Mr. Friesen began representing petitioner during his appeal. Over the State's objection, the OCCA permitted Mr. Friesen to file a supplemental brief on petitioner's behalf. The brief contained numerous allegations of trial counsel ineffectiveness. Ersland, No. F-2011-638, slip op. at 14 & 15 n.5. See Resp't's Exhibits 2 and 8.*

[his] failed attempt to stop [Ingram] was retrieved from [his] pants pocket where he always kept it, and not from behind the counter of the pharmacy where everyone assumed it had been before the robbery." Pet'r's Ex. 5 at 1. Mr. Friesen states that petitioner's "memories of the incident gain[ed] clarity and accuracy" after he "aggressively question[ed] and confront[ed] [petitioner]." Both Mr. Friesen and a licensed professional counselor, Dr. Richard Kishur, believe that petitioner's ability to remember this information was affected by Posttraumatic Stress Disorder. Pet'r's Ex. 3; Pet'r's Ex. 6 at 2. In Dr. Kishur's opinion, petitioner "experienced a post-traumatic stress reaction following the first robbery of Reliable Pharmacy in March 2007. While [petitioner] was not on the scene of the first robbery, his close emotional attachment to other employees likely caused him to experience stress reaction similar to that of the employees at the actual event." Pet'r's Ex. 3 at 1. Mr. Friesen believes that petitioner's PTSD was the result of the robbery involving petitioner and "the refusal of others to believe [petitioner]." Pet'r's Ex. 6 at 2.

In denying petitioner relief, the OCCA held as follows:

> In his first proposition of error Petitioner claims that new evidence exists requiring reversal of his conviction. Petitioner maintains that new evidence establishes that the second handgun was in his pocket instead of a drawer, a fact he only recently remembered after being told by his appellate attorney. Petitioner argues that this evidence of the location of the second pistol was unavailable at the time of his trial and would have changed the results at trial. The standard for newly discovered evidence claims "requires that the evidence be material, that it could not have been discovered before trial with due diligence, it cannot be cumulative, and it must create a reasonable probability of changing the outcome of the trial." Sheppard v. State, 1987 OK CR 4, ¶4, 731 P.2d 989, 990. Based on the record in this case this is not new evidence and even if the alleged new evidence was produced at trial, there is not a reasonable probability that it would have changed the result. This proposition is without merit.

> Petitioner's new evidence consists of four affidavits produced between May 15, 2014 – May 19, 2014. The first is from Petitioner's employer stating Petitioner carried a handgun on his person. The next affidavit is Petitioner's sworn statement that following his trial and appeal he was confronted by then counsel, Doug Friesen, with a different version of events surrounding the shooting. After discussion and questioning Petitioner's memory of the events changed to fit the new version. The third affidavit is from counsel Friesen and explains that Friesen conducted an investigation of the incident after Petitioner's trial and appeal. Based on this investigation Friesen believed that the facts surrounding incident were different than originally presented. After Friesen discussed the new version of events with Petitioner the Petitioner began to remember that this version was actually the correct version of events. Last is the statement of a psychological counselor maintaining that due to the traumatic stress of a previous robbery of this same business, during which Petitioner was not present, Petitioner was unable to accurately recall the events of the robbery during his trial and appeal. The record in this case and Petitioner's arguments in his District Court pleadings do not establish that any of the information in these affidavits could not have been discovered through the exercise of due diligence prior to trial or direct appeal. If anything, the record establishes just the opposite. Further, Petitioner fails to establish that based on this alleged new evidence there is a reasonable probability that it would have changed the trial result.

Ersland, No. PC-2015-94, slip op. at 4-5.[5] Petitioner has not shown that this determination by the OCCA is unreasonable.[6]

---

[5] *Petitioner's Exhibits 3-6 appear to be the affidavits he presented in support of his request for post-conviction relief.*

[6] *The OCCA's determination that petitioner's evidence is not new evidence is a finding of fact. The AEDPA has two provisions which govern state-court factual determinations, 28 U.S.C. §§ 2254(d)(2), (e)(1). Section 2254(d)(2) permits habeas relief where the state court rendered "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" and Section 2254(e)(1) affords a presumption of correctness to state court factual determinations that can only be rebutted by clear and convincing evidence. Because the Supreme Court has not yet decided the relationship between these provisions, the court will assess petitioner's challenge to the OCCA's factual finding under Section 2254(d)(2), the one most favorable to him. Brumfield v. Cain, 576 U.S. \_\_\_, 135 S. Ct. 2269, 2282 (2015); Titlow, 134 S. Ct. at 15; Wood v. Allen, 558 U.S. 290, 299-301 (2010); Grant v. Trammell, 727 F.3d 1006, 1024 & n.6 (10th Cir. 2013).*

Petitioner's evidence regarding the second gun is information he himself possessed. It is only new in the sense that he did not allegedly remember it until sometime after his trial and direct appeal. In any event, it is clear that if Mr. Friesen was capable of jarring petitioner's memory regarding the location of the second gun, then it was, as the OCCA found, capable of being discovered before trial with the exercise of due diligence.

The OCCA also found that even if the evidence had been presented at trial, "there is [no] reasonable probability that it would have changed the trial result." Ersland, No. PC-2015-94, slip op. at 5. This is also not an unreasonable determination. On the video surveillance tapes, petitioner can be seen opening a drawer behind the counter and pulling out the second gun. Nothing on the tapes supports petitioner's new assertion that the gun came from his pocket. And even if the gun was in his pocket, it does not negate malice as petitioner alleges. Petitioner's argument is that because he had the gun in his pocket, he could have shot Parker on his way back inside and he would have had no need to go behind the counter. Petitioner therefore contends that his new evidence shows that he went behind the counter to call 911 and only shot Parker again when he heard and saw Parker move. Here again, however, the tapes contradict petitioner, as they show him making a beeline to the drawer, which is in the middle of the counter, and in so doing, walking right past the phone.

In evaluating the OCCA's resolution of the claim, petitioner's credibility must also be considered. From his first interview just hours after the event, petitioner has made statements which starkly contradict the video and other trial evidence. For example, petitioner told police that all six shots to Parker were fired before he left the pharmacy to

chase Ingram, when the video clearly shows a break between the shots (Tr. VI, 32-33; State's Exs. 117 and 122).[7] In a media interview, petitioner also claimed that Parker "had rolled over to his side and was trying to get up." This, however, was refuted by evidence which showed that after taking the shot to the head and falling down, Parker did not move (Tr. VI, 184-86; Tr. VII, 53-54; Tr. VIII, 177-98).

Petitioner also lied and fabricated evidence. Petitioner repeatedly stated that he was a war veteran who was injured in combat. He also claimed that he had killed a lot of people during the war. None of this is true (Tr. V, 224; Tr. VI, 29, 170, 176, 181-82; Tr. VII, 54-55; State's Ex. 117). In addition, in an attempt to corroborate his statement that Parker and Ingram had fired shots at him, petitioner implanted bullet fragments in his arm (Tr. VI, 177-81; Tr. VIII, 38-57; Tr. IX, 102). See Pet. at 5 n. 2 (acknowledging his "foolish[]" attempt to "bolster his position").

This behavior casts a large shadow on petitioner's claim. Rather than a product of memory recall, petitioner's new evidence is most likely another attempt by petitioner to spin the evidence in an effort to justify his criminal action. His lack of credibility also supports the OCCA's determination that even if petitioner had been given the opportunity to present this evidence to a jury, there is no reasonable probability that the jury's verdict would have been affected. Adding to the fact that petitioner's new evidence lacks

---

[7] *When petitioner made this statement, the police had not yet viewed the surveillance camera footage (Tr. VI, 22-23).*

evidentiary support in the first instance, petitioner's credibility issues would have further diminished any value of the evidence.

For the foregoing reasons, the court concludes that the OCCA reasonably denied petitioner relief with respect to his new evidence. Ground One is therefore denied.

## GROUND TWO

In Ground Two, petitioner faults his trial counsel for not discovering his new evidence and presenting it at trial.[8] Because the OCCA found this claim waived, Ersland, No. PC-2015-94, slip op. at 3, petitioner also claims that his appellate counsel was ineffective for failing to raise the claim on direct appeal. Pet. at 14. Neither claim has merit.[9]

Both trial and appellate counsel ineffectiveness claims are governed by Strickland v. Washington, 466 U.S. 668 (1984), and in accordance with Strickland, petitioner must show not only that his counsel performed deficiently, but that he was prejudiced by counsel's actions. Id. at 687. In order to demonstrate prejudice, petitioner "must show that there is

---

[8] *Petitioner also references trial counsel's failure to communicate. This claim, however, was raised and rejected on direct appeal. Ersland, No. F-2011-638, slip op. at 25-27. Petitioner has not shown that the OCCA unreasonably denied him relief on this claim.*

[9] *Rather than address the procedural bar issue (and whether petitioner has adequately alleged a claim of ineffective assistance of appellate counsel), the court elects to take the easier course and dispose of petitioner's ineffectiveness claims on the merits. See Brown v. Sirmons, 515 F.3d 1072, 1092-93 (10th Cir. 2008) (quoting Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007), and acknowledging that "the interest of efficiency" is served by this suggested approach); Snow, 474 F.3d at 717 ("We can avoid deciding procedural bar questions where claims can readily be dismissed on the merits."); Revilla v. Gibson, 283 F.3d 1203, 1210-11 (10th Cir. 2002) (acknowledging the court's discretion to bypass the procedural bar question and reject the claim on the merits). Because the OCCA addressed petitioner's appellate counsel claim on the merits, it is afforded AEDPA deference.*

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Strickland also provides that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697. Such is the case here.

For the reasons discussed in Ground One, supra, even if petitioner's new evidence had been introduced at trial, there is no reasonable probability that the outcome of petitioner's trial would have been different. Because petitioner's trial counsel ineffectiveness claim lacks merit, appellate counsel was not ineffective for failing to raise it on direct appeal. See Ellis v. Hargett, 302 F.3d 1182, 1186-87 (10th Cir. 2002) ("To demonstrate ineffective assistance of counsel a petitioner must establish . . . that there is a reasonable probability that, but for counsel's unreasonable errors, the outcome of his appeal would have been different.").

Ground Two is denied.

## CONCLUSION

Having concluded petitioner's arguments do not establish a right to relief, his petition for writ of habeas corpus is **DENIED**. Doc. 1. A certificate of appealability is also **DENIED**. Judgment will enter accordingly.

**IT IS SO ORDERED**.

Dated this 26th day of September, 2017.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE